UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| MARTIN RAPAPORT, RAPAPORT USA, and INTERNET DIAMOND EXCHANGE, LLC, <br>     Plaintiffs, <br> v. <br> IDEX ONLINE, LTD., IDEX ONLINE S.A., IDEX ONLINE ISRAEL, LTD., JOHN DOES I-XX, and ROE CORPORATIONS I-XX, <br>     Defendants. | CIVIL ACTION NO: 04 06626 (RJH) |

_____/

## DEFENDANTS' RESPONSE TO PLAINTIFFS' MOTION TO DISMISS ITS TENTH CLAIM FOR PATENT INFRINGEMENT AND DEFENDANTS' CROSS MOTION FOR RULE 11 SANCTIONS

Defendants, IDEX ONLINE, LTD., IDEX ONLINE S.A., IDEX ONLINE ISRAEL, LTD (herein collectively "IDEXONLINE"), hereby oppose Plaintiffs', MARTIN RAPAPORT, RAPAPORT USA, and INTERNET DIAMOND EXCHANGE, LLC., motion to dismiss Patent Infringement **Count 10** and cross move requesting that the Court impose Rule 11 sanctions, fees and costs on Plaintiffs, MARTIN RAPAPORT, RAPAPORT USA, and INTERNET DIAMOND EXCHANGE, LLC., and their counsel (herein collectively "Rapaport") for failure to conduct an adequate pre-filing investigation of patent infringement per Antonious v. Spalding & Evenflo Cos., 275 F.3d 1066 (Fed. Cir. 2002); View Eng'g, Inc. v. Robotic Vision Sys., 208 F.3d 981(Fed. Cir. 2000); and Judin v. United States, 110 F.3d 780 (Fed. Cir. 1997).

A.    IDEXONLINE's Opposition to Rapaport's Motion to Dismiss Without Prejudice .........2

B1.    IDEXONLINE's Cross Motion for Rule 11 Sanctions ......................................................5

B2.    Patent Claim Analysis and Construction ..........................................................................12

1

A.      <u>IDEXONLINE's Opposition to Rapaport's Motion to Dismiss Without Prejudice</u>

Rapaport moved to dismiss its patent infringement claim (**Count 10**) under Fed.R.Civ.P. 41(a)(2) which states:

> Except as provided in paragraph (1) of this subdivision of this rule, an action shall not be dismissed at the plaintiff's instance save upon order of the court and upon such terms and conditions as the court deems proper. If a counterclaim has been pleaded by a defendant prior to the service upon the defendant of the plaintiff's motion to dismiss, the action shall not be dismissed against the defendant's objection unless the counterclaim can remain pending for independent adjudication by the court. Unless otherwise specified in the order, a dismissal under this paragraph is without prejudice.

Fed.R.Civ.P. 41(a)(2).

Rapaport wants the Court to dismiss the patent infringement charge against IDEXONLINE without prejudice. IDEXONLINE seeks dismissal with prejudice and an award of attorneys fees and costs under Rule 11 because Rapaport brought the patent action without an adequate pre-filing investigation. As Rule 41 indicates, this Court may dismiss Rapaport's patent infringement action with or without prejudice and with our without assessment of costs or attorneys fees, in its discretion.

The Second Circuit applies a five part test for determining whether to grant a motion to dismiss claims with prejudice. "Voluntary dismissal without prejudice is thus not a matter of right. Factors relevant to the consideration of a motion to dismiss without prejudice include the plaintiff's diligence in bringing the motion; any 'undue vexatiousness' on plaintiff's part; the extent to which the suit has progressed, including the defendant's effort and expense in preparation for trial; the duplicative expense of relitigation; and the adequacy of plaintiff's explanation for the need to dismiss." <u>Zagano v. Fordham Univ.</u>, 900 F.2d 12, 14 (2d Cir. 1990)(citations omitted).

In a case that continued for nearly four years, the plaintiff sought to dismiss the trademark and trade dress infringement claims without prejudice. *See* <u>Deere & Co. v. MTD Holdings Inc.</u>,

2

2004 U.S. Dist. LEXIS 11707, 6-7 (S.D.N.Y. 2004). The court noted "[A]lthough no trial date has been set, discovery is complete and no further expert reports or surveys are permitted. Accordingly, although this motion is not being made on the 'eve of trial,' discovery is complete and barring a settlement this case is basically ready to proceed to trial. Therefore, it would be extremely prejudicial if at this late stage, after all the parties have gone through, plaintiff were allow to dismiss its claims without prejudice retaining the option of filing this suit again at a later date." Id. at 6-7 (citations omitted). In the instant case, discovery was to close on October 15, 2007, the case has been ongoing for nearly three years and no trial date is set. The court in Deere also explained that operating a business under the constant threat of litigation, after those issues had been litigated for years, would be clearly prejudicial. *See* id. at 7-8. In the present case, Rapaport's motion places IDEXONLINE on notice that Rapaport may re-file its patent infringement action since "they could not rule out the possibility of a patent infringement by defendants." *See* Motion to Dismiss, pg 2.

The district court in Jewelers Vigilance Comm. v. Vitale Inc., 1997 U.S. Dist. LEXIS 14386, 8 (S.D.N.Y. 1997) denied plaintiff's request to dismiss without prejudice and dismissed the count WITH prejudice by applying the Zagano factors. The Jewelers court found that the parties had conducted extensive document discovery and that the discovery cutoff had already passed. The court explained, the "Defendants have exhausted considerable effort in litigating this case, further weighing against dismissal without prejudice and in favor of dismissal with prejudice." Id. When analyzing the fourth Zagano factor, namely duplicative expense of relitigation, the court noted "[t]he lack of duplicative litigation costs generally favors a dismissal without prejudice." Id. at 9. The likelihood for duplicative litigation is high given Rapaport's disregard of IDEXONLINE's numerous Rule 11 demands relating to non-infringement in August 2005. Rapaport's motion specifically reserves its right to re-litigate the patent claim. *See* Motion to Dismiss, pg. 2.

3

The Jewelers court noted that plaintiffs could have brought the motion to dismiss at any time over the prior years, which weighed in favor of granting the motion with prejudice. *See* Id. The same is true in the instant case. More than two (2) years ago in August, 2005, IDEXONLINE sent Rapaport Rule 11 letters setting forth the lack of patent infringement evidence. *See* IDEXONLINE's Notice of Filing Exhibits in Support of its Rule 11 Motion, Exhibit A, (herein "Rule 11, Exh. A"). Rapaport never responded to these Rule 11 letters. Two years later citing unduly high costs, it moves to dismiss the **Patent Count 10.** During a July, 2007 telephone hearing with this Court, Rapaport stated its intent to file the present motion to dismiss but then waited two (2) months after six (6) depositions of key witnesses (top management of both IDEXONLINE and Rapaport, including its director of computer operations). Its motion to dismiss states: "it did not seem likely that it could prove infringement in this matter without the expenditure of expenses – including legal and expert fees – **that [sic] did were not commercially justified**." Plaintiffs' Motion to Dismiss, pg. 4 (emphasis added).

As to the last Zagano factor, the adequacy of plaintiff's explanation for the need to dismiss, Rapaport's stated justification that "the expenditure of ... legal and expert fees ... [are] not commercially justified" does not rise to a level of reasonableness. Rapaport explains that the document discovery "indicated no 'smoking gun' or other proof that defendants infringed patent here.... [and the] expenditure of resources [was] out of proportion to the benefit to be gained by continuing to prosecute the claim." Motion to Dismiss, pg. 5. Rapaport fails to mention that its counsel never asked about nor mentioned the Borgato patent in suit during the six depositions over the last two months of discovery. How could a "smoking gun" be found if Rapaport never asked any questions about the patent during depositions? As discussed below, Rapaport never conducted an adequate pre-filing patent infringement analysis with a registered U.S. patent attorney.

Wherefore, IDEXONLINE requests that the Court deny Rapaport's motion to dismiss without prejudice and, at a minimum, dismiss with prejudice and award costs and attorneys fees pursuant to Rule 11. Dismissal with prejudice will not effect the counterclaim for patent invalidity. Further, dismissal without prejudice will not effect the counterclaims for declaratory judgment of non-infringement and patent invalidity.

B1.     IDEXONLINE's Cross Motion for Rule 11 Sanctions

IDEXONLINE requests that the Court impose Rule 11 sanctions, attorneys fees and costs on Rapaport and Rapaport's counsel for their failure to conduct an adequate pre-filing investigation of the alleged patent infringement prior to filing the Fifth Amended Complaint on August 26, 2005. Rapaport's prior five (5) complaints did not allege patent infringement.

Rule 11 states:

> By presenting to the court (whether by signing, filing, submitting, or later advocating) a pleading, written motion, or other paper, an attorney or unrepresented party is certifying that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances,–
> (1) it is not being presented for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation;
> (2) the claims, defenses, and other legal contentions therein are warranted by existing law or by a nonfrivolous argument for the extension, modification, or reversal of existing law or the establishment of new law;
> (3) the allegations and other factual contentions have evidentiary support or, if specifically so identified, are likely to have evidentiary support after a reasonable opportunity for further investigation or discovery; and
> (4) the denials of factual contentions are warranted on the evidence or, if specifically so identified, are reasonably based on a lack of information or belief.

Fed.R.Civ.P. 11(b).

This Court has authority to impose Rule 11 sanctions even after dismissal of the patent infringement charge. *See* Cooter & Gell v. Hartmarx Corp., 496 U.S. 384, 395 (U.S. 1990)("district courts may enforce Rule 11 even after the plaintiff has filed a notice of dismissal under Rule 41(a)(1)")(criticizing Johnson Chemical Co., Inc. v. Home Care Products, Inc., 823 F.2d 28, 31

5

(1987)); *see also* Muthig v Brant Point Nantucket, Inc. 838 F2d 600, 603 (1st Cir. 1988); Schering Corp. v Vitarine Pharmaceuticals, Inc. 889 F2d 490, 493 (3rd Cir. 1989).

> By presenting a signed paper to the court, the attorney certifies that he has performed "an inquiry reasonable under the circumstances" and has come to three conclusions: (1) that the pleading or motion "is not being presented for any improper purpose"; (2) that "the claims . . . and other legal contentions therein are warranted by existing law or by a nonfrivolous argument for the extension, modification, or reversal of existing law or the establishment of new law"; and (3) that the "allegations and other factual contentions have evidentiary support."

Antonious v. Spalding & Evenflo Cos., 275 F.3d 1066, 1071-72 (Fed. Cir. 2002)(citing Rule 11(b)(1)-(3))(Rule 11 sanctions imposed because patent plaintiff failed to buy the accused golf club and conduct a pre-filing patent claim analysis); *see also* Classen Immunotherapies, Inc. v. Biogen Idec, 381 F. Supp. 2d 452, 456 (D. Md. 2005).

"In the context of patent infringement cases, the Federal Circuit has interpreted 'Rule 11 to **require, at a minimum**, that an attorney interpret the asserted patent claims and compare the accused device with those claims before filing a claim alleging infringement.'" Rates Tech. Inc. v. Mediatrix Telecom, Inc., 2007 U.S. Dist. LEXIS 48237, 5-6 (E.D.N.Y. 2007)(emphasis added)(citing Q-Pharma, Inc. v. The Andrew Jergens Co., 360 F.3d 1295, 1300 (Fed. Cir. 2004) and Antonious v. Spalding & Evenflo Cos., 275 F.3d 1066, 1071-72 (Fed. Cir. 2002)).

> Before filing counterclaims of patent infringement, Rule 11, we think, must be interpreted to require the law firm to, **at a bare minimum,** apply the claims of each and every patent that is being brought into the lawsuit to an accused device and conclude that there is a reasonable basis for a finding of infringement of at least one claim of each patent so asserted. **The presence of an infringement analysis plays the key role in determining the reasonableness of the pre-filing inquiry made in a patent infringement case under Rule 11.** Morrison performed neither a formal nor an informal analysis of any sort. This cannot be found to be a reasonable inquiry for the purpose of filing patent infringement claims.

View Eng'g, Inc. v. Robotic Vision Sys., 208 F.3d 981, 986 (Fed. Cir. 2000)(emphasis added).

A pre-filing investigation is legally required in light of the cost to defend a patent infringement suit and because the patent claims, defining the owner's rights, are analogous to a contract and attorneys are skilled in construing contract and patent claims.

> A patent suit can be an expensive proposition. Defending against baseless claims of infringement subjects the alleged infringer to undue costs -- precisely the scenario Rule 11 contemplates. Performing a pre-filing assessment of the basis of each infringement claim is, therefore, extremely important. In bringing a claim of infringement, the patent holder, if challenged, must be prepared to demonstrate to both the court and the alleged infringer exactly why it believed before filing the claim that it had a reasonable chance of proving infringement. Failure to do so should ordinarily result in the district court expressing its broad discretion in favor of Rule 11 sanctions, at least in the absence of a sound excuse or considerable mitigating circumstances.

View Eng'g, Inc. v. Robotic Vision Sys., 208 F.3d 981, 986 (Fed. Cir. 2000); *see also* Wald v. Inv. Tech. Group, Inc., 2004 U.S. Dist. LEXIS 22449 (S.D.N.Y. 2004).

The pre-filing investigation **must include** an attorney's opinion. "This court has construed Rule 11, in the context of patent infringement actions, to require that an attorney interpret the pertinent claims of the patent in issue before filing a complaint alleging patent infringement. Although the attorney may consult with the client, Rule 11 requires that the attorney not rely solely on the client's claim interpretation, but instead perform an independent claim analysis." Antonious v. Spalding & Evenflo Cos., 275 F.3d 1066, 1072 (Fed. Cir. 2002)(citing View Eng'g, Inc. v. Robotic Vision Sys., Inc., 208 F.3d 981, 986, (Fed. Cir. 2000); Judin v. United States, 110 F.3d 780, 784, (Fed. Cir. 1997); and S. Bravo Sys., Inc. v. Containment Techs. Corp., 96 F.3d 1372, 1375, (Fed. Cir. 1996)). "'The presence of an infringement analysis plays the key role in determining the reasonableness of the pre-filing inquiry made in a patent infringement case under Rule 11.'" Arrival Star, Inc. v. Descartes Sys. Group, Inc., 2004 U.S. Dist. LEXIS 22433, 30-31 (S.D.N.Y. 2004)(quoting View Eng'g, Inc. v. Robotic Vision Sys., Inc., 208 F.3d 981, 986 (Fed Cir. 2000), and citing Q-Pharma, 360 F.3d at 1302). Construing a patent claim is a matter of law and "an attorney's

7

proposed claim construction is subject to the Rule 11(b)(2) requirement that all legal arguments be nonfrivolous." Id.

In August, 2005, more two (2) years ago, IDEXONLINE sent Rapaport two letters demanding withdrawal of the charge of patent infringement or an explanation as to why IDEXONLINE's system infringed the patent in suit. Rule 11 Exh. A. Rapaport never responded to the substance of these letters.

IDEXONLINE moved to dismiss the **Patent Count 10** in its motion to dismiss of October 28, 2005 based upon documents attached to the pleadings which did not show infringement. *See* IDEXONLINE's Motion, pp. 31 - 38. The Court denied this motion on September 29, 2006.

IDEXONLINE propounded requests for production of documents upon Rapaport, and specifically sought:

> Any and all documents constituting, concerning, evidencing, relating or pertaining to any pre-filing investigation, analysis or due diligence done by You prior to the preparation and assertion of Plaintiffs' claim for infringement of the '178 patent, including without limitation, all pre-filing reports, infringement studies, or opinions relating to the accused system prepared or issued by any in-house counsel or other employee of any Plaintiff, outside patent counsel, litigation counsel, any third party legal or technical expert or any consultant of any kind.

Rule 11 Exh. B, Def'ts' Second Request for Documents, Request No. 9, July 23, 2007.

To date, Rapaport has not produced any pre-filing investigative reports or patent claim charts, analyzing the patent in suit and the accused system. Rapaport objected to the production of any such documents, asserting attorney-client privilege. Rapaport then produced a privilege log which does not identify a pre-filing investigative report or patent claim chart. Rule 11 Exh. C.

More importantly, the law is clear that in order to analyze the patent claims, a patent attorney must study the prosecution history of the patent in suit. The prosecution history encompasses all patent documents from the U.S. Patent and Trademark Office describing how the owner obtained

the patent.  The first step in any infringement analysis is the determination of the scope of the claims.  <u>Markman v. Westview Instruments, Inc.</u>, 52 F.3d 967, 979 (Fed. Cir. 1995), aff'd, 517 U.S. 370, 116 S. Ct. 1384, 134 L. Ed. 2d 577 (1996). "In interpreting claims, a court 'should look first to the intrinsic evidence of record, i.e., the patent itself, including the claims, the specification and, if in evidence, the prosecution history.'"<u>Pickhoktz v Rainbow Tech. Inc.</u>, 284 F.3d 1365, 1372-73 (Fed. Cir. 2002)(citing to <u>Vitronics Corp. v. Conceptronic, Inc.</u>, 90 F.3d 1576, 1582, 39 USPQ2d 1573, 1577 (Fed. Cir. 1996)); *accord* <u>Intamin, Ltd. v. Magnetar Techs., Corp.</u>, 483 F.3d 1328 (Fed. Cir. 2007)(citations omitted) ("[T]he court consults primarily the claims themselves in context, with much of that context supplied by the specification and the prosecution history."); *see also* <u>SRI Int'l v. Matsushita Elec. Corp.</u>, 775 F.2d 1107, 1118 (Fed. Cir. 1985) (en banc) ("A claim is construed in the light of the claim language, the other claims, the prior art, the prosecution history, and the specification, not in light of the accused device").

Rapaport never produced a copy of the prosecution history of U.S. Patent No. 5,950,178 to Borgato (the "Borgato '178 patent") but IDEXONLINE's Request No. 9 clearly asks for "documents concerning, evidencing, relating or pertaining to any pre-filing investigation, analysis or due diligence" which, according to well established Federal Circuit law, requires a review of the publicly available prosecution history. Rapaport's failure to produce the Borgato prosecution history shows that it failed to conduct an adequate pre-filing investigation.

In addition to this deficiency, Rapaport produced only 14 pages of IDEXONLINE's web site as part of its massive 4900 document production.  Rule 11 Exh. E.  These pages show that IDEXONLINE does not infringe, since the web site shows that IDEXONLINE does not determine "that a sale has been made" (a claim requirement in the Borgato '178 patent claims) and does not "compare a bid with said displayed offer price, (i) if said bid matches the offer price ... communicate

9

... that a sale has been made ... and (ii) if the bid is lower... compare said bid with other stored bids to determine the highest bid ... [for] the array category" as per the Borgato patent. *See* Claim Analysis below. The absence of these non-privileged documents (the patent prosecution history and sufficient IDEXONLINE web site documents) show an inadequate basis for any type of patent analysis by a registered U.S. patent attorney.

On May 29, 2007, Rapaport responded to IDEXONLINE's Interrogatory No. 10, "Identify each person with knowledge concerning the manner in which Defendants are alleged to infringe the Patent-in-Suit" by "... identif[ying] Martin W. Schiffmiller, Esq...." Rule 11 Exh. E. On August 14, 2007, Rapaport supplemented its response to Interrogatory No. 10 and added Lawrence C. Hersh, Esq. Rule 11 Exh. E. Both Schiffmiller and Hersh are registered U.S. patent attorneys. Rule 11 Exh. F. Earlier document production requests were broad enough to cover all non-privileged pre-filing documents provided to Schiffmiller and Hersh if, in fact, they engaged in a pre-filing patent infringement investigation. Further, Hersh was an associate attorney with Rapaport's current counsel, Ronald Coleman, when **Patent Count 10** was added to the complaint. If privileged or non-privileged pre-filing documents existed due to an analysis by patent attorney Hersh, trial counsel Coleman would have these documents.

To date, no document from either of these "fact" witnesses has been produced regarding a pre-filing infringement opinion. A review of the privilege log provided by Rapaport does not identify any document from patent attorneys Schiffmiller or Hersh. Rule 11 Exh. C. The log lists items regarding the "Borgato agreement" because Rapaport purchased the patent in suit from inventor Borgato. In fact, the privilege log never refers to "claim" or "claims" or "scope" or "chart" or "coverage" or "compare." There are only 6 potential references to a Borgato patent analysis at

document numbers 227, 228, 239, 240, 245 and 247 and the log does not associate those documents with patent attorneys Schiffmiller or Hersh. Rule 11 Exh. C; pp. 017 - 018.

Martin Rapaport is the president, namesake and leader of Plaintiff Rapaport group. During Martin Rapaport's 2-day deposition on August 16, 2007, he testified there was a pre-investigation opinion or report prepared. Rule 11 Exh. G, Rap Depo pgs. 466, lines 11-20; pg. 468-69, lines 1-6; pg. 471, lines 2-19; and pg. 473, lines 4-13. However, he was not able to specify whether the alleged investigation occurred prior to or after the inception of the lawsuit. Rule 11 Exh. G, Rap Depo pg. 476, lines 19-22. Further, he states that his attorneys, including Schiffmiller and Hersh, as well as Ronald Coleman and corporate counsel Saville Stern, would have knowledge regarding such a report. Rule 11 Exh. G, Rap Depo pgs. 464-76. However, the privilege log lists only attorney Stern as having AUTHORED any Borgato patent document (no. 227) and Stern is not a U.S. registered patent attorney. *See* Rule 11 Exh. F, and the Attorney Roster on the Patent and Trademark Office web site at www.uspto.gov. Patent Attorney Alan Israel is identified as a "recipient" of several Borgato patent documents in the privilege log. Rule 11 Exh. C, docs. 228, 239, 240, 245, 247 and Rule 11 Exh. F. Israel is an associate with Schiffmiller's law firm. Rule 11 Exh. F. However, patent attorney Israel never AUTHORED any documents relative to the Borgato patent. *See* Log at Rule 11 Exh. C, docs. 228, 239, 240, 245, 247 which arguably identify the patent. The "memo regarding Borgato patent and IDEX litigation," document no. 227, was authored by in-house corporate attorney Saville Stern who is not a U.S. patent attorney. Rule 11 Exh. C, pg. 017.

Martin Rapaport's testified that attorneys Schiffmiller, Hersh, Coleman or Stern may have a pre-filing report, but Plaintiff Rapaport's interrogatory no. 10 answer only identifies Schiffmiller and Hersh as having knowledge of infringement, not attorney Israel. Rule 11 Exh. E. Therefore, although patent attorneys Schiffmiller and Hersh have direct knowledge of infringement

11

(interrogatory answer no. 10), they never authored any pre-filing investigative report according to the privilege log. Further, if attorney Stern's document no. 227 in the privilege log is the infringement report discussed by leader Martin Rapaport, then such report is deficient since Seville is not a registered U.S. patent attorney and is not qualified to understand and construe the Borgato patent and patent claim coverage.

If the pre-filing infringement report was given orally, then there is insufficient documentation of IDEXONLINE's system AND Rapaport never obtained a copy of the prosecution history of the patent to understand the meaning and limitations of the patent. Given the complex nature of the Borgato computer patent, an oral report is not legally sufficient. In fact, the privilege log shows that no privileged document discusses the "claims" or "scope" or "coverage" of the Borgato patent by any of Rapaport's six (6) attorneys (trial counsel Coleman, trial co-counsel Michael Charish, fact witnesses Schiffmiller or Hersh, Israel, or in-house counsel Stern). To date, Rapaport has produced nearly 4900 documents to IDEXONLINE, of which only fourteen (14) relate to the IDEXONLINE system or web site. Rule 11 Exh. D. This meager collection of IDEXONLINE web site documents, without the Borgato patent prosecution history, cannot support any attorney's infringement opinion.

Rapaport did produce a partial version of the Borgato patent (Rule 11 Exh. H) but this document is an incomplete copy of the patent which omits most of the patent specification and omits the most important part of the patent, that is, the claims which define the scope of coverage. *See* Rule 11 Exh. I, a complete copy of Borgato '178 patent.

B2.   Patent Claim Analysis and Construction

To infringe the patent in suit, the IDEXONLINE system must include a feature identical to each word or phrase in at least one independent claim in U.S. Patent No. 5,950,178 to Borgato. Rule 11 Exh. I. "It is a bedrock principle of patent law that the claims of a patent define the invention to

12

which the patentee is entitled the right to exclude." Phillips v. AWH Corp., 392 F.3d 1336 (Fed. Cir. 2005)(en banc). The Borgato patent requires that the accused system **must record sales** of diamonds or stones. IDEXONLINE's system does not record sales as explained in the Rule 11 letter sent in August, 2005. *See* Rule 11 Exh. A, August 30 letter, p. 010, para. 3 and 5. The August 29 and 30, 2005 letters outline IDEXONLINE's early non-infringement position for each independent claim in the Borgato patent.

IDEXONLINE invited Rapaport to respond "[i]f you disagree with the patent claim analysis set forth below, please advise," but no substantive explanation of how IDEXONLINE infringes the Borgato patent has ever been supplied by Rapaport. Rule 11, Exh. A, pp.001 and 009. The absence of any substantive reply to the Rule 11 letters implies an absence of any pre-filing infringement analysis by Rapaport.

In order to establish infringement, a patentee must show the presence of each element or its substantial equivalent in the accused device or system. Charles Greiner & Co. v. Mari-Med Mfg., Inc., 962 F.3d 1031 (Fed. Cir. 1992).

In brief, the Borgato patent covers a computer system or program that facilitates the sale of diamonds or other precious stones.

Patent claim 1 recites:

> said [computer] host processor including means to compare a bid with said displayed offer price, (i) **if said bid matches the offer price said processor** including means to **communicate** over said link to the identified seller and buyer of the stone **that a sale has been made and means for removing said stone data for the sold stone from the data matrix,** said comparing means comparing the prices of the remaining stone data of said category to determine the lowest price for the remaining stones and assign the lowest priced remaining stone to the primary position and (ii) if the bid is lower than the displayed offer price said processor including means to store said bid in the array category and compare said bid with other stored bids to determine the highest bid for the category, said determined highest bid assigned to a primary bid position at the array category.

Rule 11 Exh. I, Borgato '178, Claim 1, col. 16, lines 11 - 26(emphasis added).

13

The IDEXONLINE system does not "match bids" and hence does not process data "to communicate over said link to the identified seller and buyer of the stone that a sale has been made." Sales data for diamonds is not stored by the IDEXONLINE system. To best understand the IDEXONLINE system, one need only view the multimedia presentation titled "Take a Tour" at www.idexonline.com. *See* "Members Access" (insert any user name and any password at "log-in" (no approved password is necessary), and on the "Log-In" screen, select "Take a Tour."). The resulting multimedia display accurately shows the operation of the IDEXONLINE system. An IDEXONLINE subscriber can search for a particular diamond and the IDEXONLINE system will display the results in tabular form. This access and process was explained to Rapaport and the Court in IDEXONLINE's motion to dismiss filed on October 28, 2005, page 33, ftnt. 21. Rapaport could have investigated infringement at that time but chose not to do so because it failed to produce documents relevant to such investigation as discussed above. Compare the multimedia show to the produced IDEXONLINE system documents Rule 11 Exh. D.

The IDEXONLINE system does not have "means for removing said stone data for the sold stone from the data matrix." Rule 11 Exh. I, Borgato patent Col. 16, line 15. Once an offer to sell diamond data is stored on the IDEXONLINE system, it stays in the IDEXONLINE database system until the offer expiration date and then the offer to sell data is deleted. Alternatively, when the offer to sell data is periodically (typically daily) uploaded by diamond sellers into the IDEXONLINE system, the "old" offer to sell data may be omitted from the new, uploaded data.

The IDEXONLINE system does not log-in or record stone sales data. Inventory data listing stones available for sale and the associated sales price is continually updated by suppliers. The IDEXONLINE system does not know if the stones are sold or just removed from inventory. This

is apparent from a cursory review of the IDEXONLINE system. Rule 11 Exh D produced by Rapaport.

If IDEXONLINE does not infringe patent claim 1, dependent claims 2 - 9 cannot be infringed. To infringe a patent, one must infringe at least one independent claim and dependent claims cannot be infringed unless the referenced independent claim is infringed. <u>Medtronic, Inc. v. Advanced Cardiovascular Sys.</u>, 248 F.3d 1303, 1310 (Fed. Cir. 2001); <u>Wahpeton Canvas Co. v. Frontier, Inc.</u>, 870 F.2d 1546, 1552 n.9, 1553, (Fed. Cir. 1989) (explaining, in the context of dependent claims, that if a broad claim is not infringed, then another claim that is strictly narrower is also not infringed).

With respect to the other independent claims in the Borgato patent, the same analysis applies. The IDEXONLINE system does not have specific claimed features such as a "sale has been made." Independent claims 10, 16 and 18 require (a) that a sale has been made; and (b) that the system "compare a bid with said displayed offer price, (i) if said bid matches the offer price ... communicate ... that a sale has been made ... and (ii) if the bid is lower... compare said bid with other stored bids to determine the highest bid ... [for] the array category." Claim 10 states:

> said [computer] host processor including means to compare a bid with said displayed offer price, (i) **if said bid matches** the offer price said processor including means to **communicate over said link to the identified seller and buyer of the diamond that a sale has been made and** means for **removing said data for the sold diamond** from the data matrix, ...

Rule 11 Exh. I, Borgato '178, Claim 10, col. 17, line 54 (emphasis added).

Claim 16 recites:

> said [computer] host processor comparing the bid with said displayed offer price, (i) **if said bid matches** the offer price said processor **confirming over said link to the identified seller and buyer of the stone that a sale has been made and removing said stone data for the sold stone from the data matrix** ...

Rule 11 Exh. I, Borgato '178, Claim 16, col. 18, line 62 - col. 19, line 9 (emphasis added).

Claim 18 states:

> said [computer] host processor comparing the bid with said displayed offer price, (i) if said **bid matches the offer price said processor confirming to the identified seller and buyer of the diamond that a sale has been made and removing said data for the sold diamond from the data matrix** ...

Rule 11 Exh. I, Borgato '178, Claim 18, col. 20, line 14 (emphasis added).

These deficiencies are apparent to any registered U.S. patent attorney who has studied Borgato and other computer program patents. The patent attorney would need to review the Borgato '178 patent, the prosecution history of the patent and carefully study the IDEXONLINE system in order to complete an adequate pre-filing investigation, whether in report form as testified to by Martin Rapaport, or orally. The absence of (a) a pre-filing report in the privilege log; (b) an author qualified to render such report in the log; (c) a copy of the Borgato patent prosecution history produced by Rapaport; and (d) any substantive response to the Rule 11 letters supports the conclusion that Rapaport did not conduct an adequate pre-filing investigation. Rapaport's failure to produce non-privileged documents sufficient to support an infringement analysis by fact witnesses Schiffmiller and Hersh also supports the conclusion that no pre-filing report was prepared. The absence of documentation contradicts Martin Rapaport's deposition testimony that one of his attorneys, trial counsel Coleman, co-counsel Michael Charish, fact witnesses Schiffmiller or Hersh, Israel, or in-house counsel Stern, prepared such a report.

## CONCLUSION

The absence of several Borgato claim elements, including the lack of recording sales of diamonds on IDEXONLINE's system, was well known in August, 2005 since the IDEXONLINE web site was active at that time, and is still well known as established by Rapaport' motion to dismiss **Count 10** for Patent Infringement. The law is clear that Rapaport was required to obtain a patent claim analysis from an attorney prior to filing the charge of patent infringement and they

did not. IDEXONLINE seeks its costs and attorneys fees for defending this frivolous charge of patent infringement and asks the Court to assess fees and costs as sanctions against both the plaintiff Rapaport and its counsel of record.

Dated: October 17, 2007            Respectfully submitted,

                                    By: /s/ Robert Kain
                                    Robert C. Kain, Jr., Esq. (RK 7454)
                                    Florida Bar No. 266760
                                    RKain@FocusOnIP.com
                                    Fleit, Kain, Gibbons, Gutman, Bongini & Bianco, P.L.
                                    750 Southeast 3rd Avenue, Suite 100
                                    Fort Lauderdale, Florida 33316
                                    Telephone:    (954) 768-9002
                                    Facsimile:    (954) 768-0158
                                    Counsel for Defendants

cc:   Esther S. Trakinski, Esq.
      752 West End Avenue
      New York, New York 10025
      Telephone: 917-748-1543
      Co-Counsel for Defendants

## CERTIFICATE OF SERVICE

I hereby certify that a true accurate and correct copy of the foregoing was served via email on ___Oct. 17_____ , 2007 on all counsel or parties of record on the attached service list.

                                      /s/ Robert Kain
                                      Robert C. Kain, Jr.

Service List:
Ronald D. Coleman, Esq.
Bragar Wexler & Eagle, P.C.
885 Third Avenue, Suite 3040
New York, NY 10022
Tel: (212) 308-5858
Counsel for Plaintiffs

cc:   Michael Charish
      Co-counsel for Plaintiffs

F:\RCK\CLIENTS\Angel\Rapaport-v-Idex\Mot-Dismiss-Pat-Claims-Cross-Rule-11-101707-final.wpd