UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

DIAMONDS.NET LLC,
INTERNET DIAMOND EXCHANGE, LLC,
MARTIN RAPAPORT, &
RAPAPORT USA,

                 Plaintiffs,

         - against -

IDEX ONLINE, LTD.,
IDEX ONLINE ISRAEL, LTD.,
IDEX ONLINE S.A.,
JOHN DOES I-XX, &
ROE CORPORATIONS I-XX,

               Defendants.

1:04-cv-06626-RJH

**MEMORANDUM
OPINION AND ORDER**

Richard J. Holwell, District Judge:

       In September 2005, plaintiffs Diamonds.net LLC, Internet Diamond Exchange, LLC, Martin Rapaport, and Rapaport USA (collectively, "Rapaport") filed suit against defendants (collectively, "Idex") asserting ten claims relating to defendants' alleged infringement of plaintiffs' intellectual property rights. Rapaport's tenth claim alleged that Idex was infringing U.S. Patent No. 5,950,178. Both Rapaport and Idex operate websites for buying and selling diamonds. The patent is directed at a system for facilitating transactions in precious stones.

       Idex responded by filing a counterclaim which alleged that the patent was invalid. After discovery, Rapaport dismissed the infringement claim with prejudice and covenanted not to sue Idex under the patent for any of Idex's activities before February 20, 2008. Rapaport now moves to dismiss Idex's invalidity counterclaim, arguing that because there is no longer an actual controversy over infringement, the Court lacks

jurisdiction to adjudicate the patent's validity. The Court finds, however, that in the particular circumstances of this case, an actual controversy as to the patent's validity persists. Rapaport's motion must therefore be denied.

## I.      BACKGROUND

The parties to this action operate rival websites for buying and selling diamonds. Rapaport's properties include the "Internet Diamond Exchange," a full service exchange that guarantees payment to suppliers and delivery to buyers, and "RapNet," a dealer-to-dealer trading network. (*See* Index@ [sic] Internet Diamond Exchange, http://www.diamonds.net/Info/AboutIndex.aspx (last visited Nov. 26, 2008); RapNet Diamond Trading Network, http://www.diamonds.net/Info/AboutRapnet.aspx (last visited Nov. 26, 2008).) Idex's property, "IDEX Online," bills itself as "[t]he world's only fully automated, wholesale, online trading service for industry professionals." (Idex Online, International Diamond and Jewelry EXchange [sic], https://www.idexonline.com/index.asp (last visited Nov. 26, 2008).)

On August 25, 2005, Rapaport filed a "Fifth Amended and Supplemented Complaint" ("Compl."). In its tenth claim for relief, the complaint alleged that Idex was infringing U.S. Patent No. 5,950,178 (the "Borgato" patent) by listing, selling, offering for sale, and facilitating the sale of diamonds on its website. (Compl. ¶¶ 138, 140.) The patent, which is controlled by Rapaport, is directed at "a data processing system and method for facilitating transactions in precious stones such as diamonds." (Borgato Patent at [57].) The complaint demanded disgorgement of profits, treble damages, attorneys fees, and costs. (Compl., at 33.)

On November 30, 2006, Idex filed a counterclaim challenging the validity and enforceability of the Borgato patent. (*See* Answer to Compl. & Counterclaim Against All Pls. ¶ 165 (Nov. 30, 2005).) Idex also denied that its website infringed the Borgato patent. (*Id.* ¶ 166.) As relief, Idex asked that the Court declare the Borgato patent invalid and unenforceable. (*Id.* at 21.)

On December 13, 2007, the parties submitted a proposed order that dismissed the infringement claim with prejudice. The order, however, purported not to impact the invalidity counterclaim. The Court entered the order on December 19, 2007.

Two months later, on February 19, 2008, Rapaport moved to dismiss the counterclaim, arguing that in the absence of a dispute over infringement, the Court lacks jurisdiction to adjudicate Idex's invalidity claim.[1] With its motion, Rapaport submitted a covenant not to sue. In it, Rapaport "unconditionally and irrevocably covenant[ed] not to assert any claim of patent infringement . . . against Idex . . . under the Borgato Patent, as it currently reads, based on IDEX's website located at www.idexonline.com as it currently exist[ed] as of the date of this covenant, or previously existed." (Covenant Not To Sue (Feb. 19, 2008).)

Opposing Rapaport's motion, Idex contends there is still a live dispute over the validity of the patent, because Idex plans to launch an upgraded version of its website that will potentially practice the Borgato patent. (*See* Def.'s Surreply to Pl.'s Mot. to Dismiss Def.'s Fifth Counterclaim 2-8 (Apr. 21, 2008) ("Def.'s Second Mem.").) In support of

---

[1] Rapaport stipulated to terms of the December 19 order, but claims that further research revealed that "fuller consideration of the [jurisdictional] question merited the Court's attention." (Pl.'s First Mem. at 3.) The Court, which appreciates Rapaport's attention to the limits on its authority, need not consider the effect of Rapaport's stipulation, since subject matter jurisdiction "can never be forfeited or waived." *Sharkey v. Quarantillo*, 541 F.3d 75, 88 (2d Cir. 2008).

this point, Idex submitted (1) screenshots of its upgraded website, (2) a patent application that describes a system Idex developed that potentially practices the Borgato patent, and (3) a declaration by Idex Online S.A.'s chief executive officer outlining Idex's future plans.  (*See* Decl. of Abraham Stern in Supp. of Def.'s Opp. to Pl.'s Mot. to Dismiss Def.'s Fifth Counterclaim & Exs. A, B (Mar. 3, 2008) ("Stern Decl.").)

For its part, Rapaport principally contends that Idex's future plans are speculative and thus do not meet the "immediacy and reality" requirements of *MedImmune, Inc. v. Genentech*, 549 U.S. 118 (2007).  (*See* Pl.'s Reply Mem. in Supp. of Mot. to Dismiss Def.'s Fifth Counterclaim 2-10 (Mar. 20, 2008) ("Pl.'s Second Mem.").)  Rapaport further contends that *Benitec Australia, Ltd. v. Nucleonics, Inc.*, 495 F.3d 1340 (2007), precludes Idex from relying on the upgraded system to show a continuing controversy (*see* Pl.'s Mem. of Law in Resp. to Def.'s Surreply in Opp. to Pl.'s Mot. to Dismiss Def.'s Fifth Counterclaim 1-5 (June 3, 2008) ("Pl.'s Third Mem.")); that there is no continuing controversy because none of Idex's current or proposed products infringe the Borgato patent (*id.* at 7-8); and that the Court, in the exercise of its discretion, should decline to adjudicate the invalidity claim (*id.* at 9-10).

## II.   DISCUSSION

When a party attempts to strategically moot a case, two basic principles of federal jurisdiction come into conflict: first, that federal jurisdiction is limited to cases of actual controversy between the parties, *see, e.g.*, *United States v. Johnson*, 319 U.S. 302, 305 (1943); *Muskrat v. United States*, 219 U.S. 346, 361 (1911); and second, that federal jurisdiction is not (or least *should* not be) subject to manipulation by parties "who might contrive to moot cases that otherwise would be likely to produce unfavorable

precedents."  Richard J. Fallon et al., *Hart and Wechsler's The Federal Courts and the Federal System* 204 (5th ed. 2003); *see, e.g.*, *U.S. Bancorp Mortgage Co. v. Bonner Mall P'ship*, 513 U.S. 18, 26 (1994); *Cardinal Chem. Co. v. Morton Int'l, Inc.*, 508 U.S. 83, 100 (1993).

The conflict, however, is more apparent than real.  While the second principle might suggest that a court should respond to jurisdictional gamesmanship by continuing to exercise jurisdiction, the first principle—an unwaivable constitutional limitation on the authority of the federal courts—precludes it from doing so unless the generally applicable elements of Article III jurisdiction are present.  Thus, in spite of this case's unusual procedural history, the issue presented by Rapaport's motion is a familiar one:  Is there an actual controversy over the validity of the Borgato patent capable of supporting a declaratory judgment action?

## A.      The "Actual Controversy" Requirement

The Declaratory Judgment Act provides that "[i]n a case of actual controversy within its jurisdiction . . . any court of the United States . . . may declare the rights and other legal relations of any interested party seeking such declaration . . . ."  28 U.S.C. § 2201.  "The phrase 'case of actual controversy' 'refers to the type of 'Cases' and 'Controversies' that are justiciable under Article III [of the Constitution]."  *Sony Elecs., Inc. v. Guardian Media Techs., Ltd.*, 497 F.3d 1271, 1283 (Fed. Cir. 2007).  Among other things, this means that "a court may not adjudicate 'a difference or dispute of a hypothetical or abstract character' or 'one that is academic or moot.'"  *Cat Tech LLC v. TubeMaster, Inc.*, 528 F.3d 871, 879 (Fed. Cir. 2008).

Soon after the Declaratory Judgment Act's passage, the Supreme Court held in *Aetna Life Insurance Co. of Hartford, Connecticut v. Haworth*, 300 U.S. 227 (1937), that to meet the actual controversy standard, a dispute must be "definite and concrete, touching the legal relations of parties having adverse legal interests." *Id.* 240-41.  The dispute must be "real and substantial." *Id.* at 241.  And it must "admi[t] of specific relief through a decree of a conclusive character, as distinguished from an opinion advising what the law would be upon a hypothetical state of facts." *Id.  See also MedImmune*, 549 U.S. at 127 (quoting *Aetna*).

Four years later, the Court noted in *Maryland Casualty Co. v. Pacific Coal & Oil Co.*, 312 U.S. 270 (1941), that "[t]he difference between an abstract question and a 'controversy' contemplated by the Declaratory Judgment Act is necessarily one of degree." *Id.* at 273.  It then summarized the actual controversy requirement as follows: "Basically, the question in each case is whether the facts alleged, under all the circumstances, show that there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment." *Id.  See also MedImmune*, 549 U.S. at 127 (quoting *Maryland Casualty*).

*MedImmune*, which disapproved the Federal Circuit's "reasonable apprehension of suit" test for identifying disputes that support a declaratory judgment action, confirmed that these standards continue to apply in patent disputes.  There, the Supreme Court held that a patent licensee is not required to terminate a license agreement before seeking a declaration that the patent which is the subject of the agreement is invalid.  549 U.S. at 129-131, 137.  Under the Circuit's disapproved test, an invalidity action could not be

brought in the absence of "(1) an explicit threat or other action by the patentee, which create[d] a reasonable apprehension on the part of the declaratory plaintiff that it [would] face an infringement suit, and (2) present activity [by the plaintiff] which could constitute infringement or concrete steps taken with the intent to conduct such activity." *Benitec Austl. Ltd. v. Nucleonics, Inc.*, 495 F.3d 1340, 1343-44 (Fed. Cir. 2007) (citations omitted).  While this test precluded a licensee in good standing from challenging a patent's validity (how could it be sued?), the Court reasoned that continued payment of royalties did not reflect the absence of an actual controversy; if the licensee did not pay, the licensor could bring an infringement suit seeking treble damages and an injunction. *Id.* at 134.  The dilemma the licensee faced—abandoning its rights or risking prosecution—is one that "it was the very purpose of the Declaratory Judgment Act to ameliorate."  *Id.* at 130 (internal quotations marks omitted).

Since *MedImmune*, the Federal Circuit has applied the actual controversy requirement in a number of diverse factual circumstances.  *See, e.g.*, *Micron Tech., Inc. v. Mosaid Techs., Inc.*, 518 F.3d 897, 899, 901 (Fed. Cir. 2008) (finding actual controversy based on "threatening letters," "behavioral observations," and annual reports reflecting "systematic licensing and litigation strategy"); *Adenta GmbH v. OrthoArm, Inc.*, 501 F.3d 1364, 1366, 1370 (Fed. Cir. 2007) (finding actual controversy based on letter from licensor threatening "to protect its rights"); *Sony Elecs.*, 497 F.3d 1271, 1285-87 (finding actual controversy based on patentee's repeated accusations of infringement); *Teva Pharms. USA, Inc. v. Novartis Pharms. Corp.*, 482 F.3d 1330 (Fed. Cir. 2007) (finding that "[a] justiciable declaratory judgment controversy arises for an [Abbreviated New Drug Application] filer when a patentee lists patents in the Orange Book, the ANDA

applicant files its ANDA certifying the listed patents under paragraph IV, and the patentee brings an action against the submitted ANDA on one or more of the patents"); *SanDisk*, 480 F.3d 1372, 1375, 1381 (finding actual controversy based on, in part, four-to-five hour meeting where engineers mapped claims of patents to features of allegedly infringing devices); *Benitec*, 495 F.3d 1340, 1346 (finding no controversy where infringement could not occur until several years later).  As the parentheticals suggest, the trend is to find an actual controversy, at least where the declaratory judgment plaintiff's product arguably practices a patent and the patentee has given some indication it will enforce its rights.

**B.    An Actual Controversy Continues To Support Idex's Invalidity Counterclaim**

Here, because the dispute between the parties extends beyond Rapaport's initial infringement claim and the specific version of Idex's website it implicated, the Court finds that Idex's counterclaim continues to be supported by an actual controversy.

First, the Court notes that plaintiffs are sophisticated business entities that are not, so to say, hesitant to make a federal case out of perceived invasions of their rights. During this litigation, plaintiffs have filed or requested leave to file six versions of their complaint (one was stricken), a motion for a preliminary injunction, a motion for judgment on the pleadings, numerous motions to compel, motions opposing the filing of documents under seal, and a motion for sanctions.  While a threat of suit is not necessary to declaratory judgment jurisdiction, *Sony Elecs.*, 497 F.3d at 1284, an aggressive litigation strategy such as plaintiffs' may signal the existence of an actual controversy. *See Micron Technology*, 518 F.3d at 899-901.

It is in this context that the Courts notes—and credits—Mr. Stern's contention that Idex's upgraded website will potentially infringe the Borgato patent.  As noted, the patent is directed at "a data processing system and method for facilitating transactions in precious stones such as diamonds."  Borgato Patent, at [57].  In the system, sellers input data for stones they wish to sell.  *See id.*  After a server stores that data, buyers bid on stones from remote terminals.  *See id.*  A server generates a matrix with the lowest offer price, the highest bid price, and the last sales price for each category of stone.  *Id.*  If a bid price and an offer price match, the server executes a sales agreement, and the buyer and seller complete the transaction via a third-party escrow.  *See id.*

> Mr. Stern testified that in the upgraded Idex system,
>
> the buyer inputs a price per carat 'My Bid (p.c.)' AND an expiration time in hours 'Expires in (hours)' after selection of a diamond stone record. This 'My Bid' data is then transmitted by the IDEXONLINE bid communication service to the seller.  The seller then accepts or rejects the 'My Bid' within the 'bid open' time period set by the 'Expires in (hours)' data input by the buyer-bidder.

(Stern. Decl. ¶ 8; *see also id.* Exs. C-1 & C-2 (screenshots depicting system); Ex. B to Def.'s Second Mem. (further screenshots).)  Like the system covered by the Borgato patent, Idex's upgraded system appears to automatically execute sales transactions when an offer and a bid match.  (*See* Ex. A to Def.'s Second Mem., at 1 (describing system as "a fully automated online polished diamond trading service guaranteeing availability and . . . delivery of purchased diamond [sic] to buyers and immediate cash payment to sellers").)  While it clearly would be premature to find that the upgraded system in fact infringes the Borgato patent, the overlap between the systems—including the collection of bids and offers by a server, the use of matrixes to organize that data, and the automatic execution of sales agreements between buyers and sellers who agree on price—

demonstrates the reasonableness of Stern's claim that Idex is afraid of an ongoing

infringement dispute with Rapaport. (*See* Stern Decl. ¶ 13.)

   In addition, the Court credits Mr. Stern's contention that Idex plans to roll out its

upgraded system in the United States in the near future. After *MedImmune*, "the issue of

whether there has been meaningful preparation to conduct potentially infringing activity

remains an important element in the totality of circumstances which must be considered

in determining whether a declaratory judgment is appropriate." *Cat Tech*, 528 F.3d at

880. *See also Sweetheart Plastics, Inc. v. Illinois Tool Works, Inc.*, 439 F.2d 871, 875

(1st Cir. 1971) ("[T]he plaintiff must allege preparations for production which suggests

[sic] that, but for a finding that the product infringes or for extraordinary and unforeseen

contingencies, the plaintiff would and could begin production immediately."). Here, the

user agreement submitted by Idex tends to show that as of April 2008, users in the United

States were beta testing the upgraded system. (*See* Ex. A to Def.'s Second Mem.) And

Mr. Stern testified that "[t]he development of the IDEXONLINE bid communication is

ongoing[,] and the next development stage will include some select U.S. customers."

(Stern Decl. ¶ 11.) The Court thus finds that the primary impediment to Idex launching

its upgraded website in the United States is the legal uncertainty created by the Borgato

patent. As in *Cat Tech*, which involved a manufacturer's preparations to produce

potentially infringing devices as soon as it received an order from a customer (*see* 528

F.3d at 878), this factor suggests the existence of an actual controversy.

   Lastly, the Court notes the significant costs that have been expended in litigation

over the Borgato patent. While such sunk costs do not provide an independent basis for

federal jurisdiction, they do require close scrutiny of Rapaport's claim that the actual

controversy that indisputably existed at the beginning of this litigation has in fact ended. *See Friends of the Earth v. Laidlaw Environmental Services (TOC), Inc.*, 528 U.S. 167, 191-92 (2000) (distinguishing mootness from standing on ground that "by the time mootness is an issue, the case has been brought and litigated, often (as here) for years"); *see also County of Los Angeles v. Davis*, 440 U.S. 625, 631 (1979) ("The burden of demonstrating mootness 'is a heavy one.'" (quoting *United States v. W. T. Grant Co.*, 345 U.S. 629, 633 (1953))).  In view of (1) Rapaport's history of aggressively defending its rights, (2) the potential that Idex's upgraded website will infringe the Borgato patent, and (3) the immediacy of Idex's plans to launch the upgraded site in this country, that scrutiny reveals a continuing controversy over the status of the Borgato patent.

## C.      Rapaport's Objections

Rapaport raises four principal objections to this conclusion.

### 1.   The Effect of the Covenant

First, Rapaport argues that its covenant not to sue is "truly unconditional" and therefore "deprives the Court of subject matter jurisdiction over defendants' patent counterclaim."  (Pl.'s Second Mem. 13; *see also* Pl.'s Third Mem. 8-9.)  This is true enough insofar as Idex's activities before February 20, 2008 are concerned.  But as the discussion till now makes clear, the decisive issue is whether Idex's activities *after* that date support a declaratory judgment action.

In this respect, it is useful to note the differences between Idex's invalidity counterclaim and the one in *Super Sack Manufacturing v. Chase Packaging Corp.*, 57 F.3d 1054 (Fed. Cir. 1995), a case that until *MedImmune* constituted the Federal Circuit's

leading discussion of the jurisdictional effect of a covenant not to sue.[2]  There, the

defendant filed an invalidity counterclaim after being sued for infringement.  *See id.* at

1055.  When the defendant moved for summary judgment, the plaintiff responded by

covenanting "not to sue Chase [the defendant] for infringement as to any claim of the

patents-in-suit based upon the products currently manufactured and sold by Chase."  *Id.*

at 1056 (original emphasis removed).  The court ruled that the covenant divested the

federal courts' jurisdiction over the invalidity counterclaim.  *Id.* at 1059-60.

      Two factors distinguish this case from *Super Sack*.  First, Rapaport's covenant not

to sue is arguably narrower than the one in *Super Sack*.  While the covenant in *Super

Sack* covered all "products currently manufactured and sold" by the defendant, 57 F.3d at

1056, Rapaport's covenant covers only "IDEX's website . . . as it currently exists *as of

the date of this covenant*, or previously existed."  (Covenant Not To Sue, at 1 (Feb. 19,

2008) (emphasis added).)  The additional limitation in Rapaport's covenant, which limits

the covenant to versions of Idex's website then in existence, finds no parallel in the *Super

Sack* covenant.  The more significant difference, however, is that the defendant in *Super

Sack* "never contended that it has already taken meaningful preparatory steps toward an

infringing activity by planning to make a new product that may later be said to infringe."

*Super Sack*, 57 F.3d at 1060.  As already discussed, quite the opposite is true here.  *See*

---

[2] Although *Super Sack*'s analysis remains instructive, the decision is no longer
controlling precedent.  In its most important analytical passage, *see* 57 F.3d at 1059-60,
the *Super Sack* court concluded that "[t]he *residual possibility of a future infringement
suit* based on Chase's future acts is simply too speculative a basis for jurisdiction over
Chase's counterclaim for declaratory judgments of invalidity"—a clear reference to the
repudiated "reasonable apprehension of suit" test.  *Id.* at 1060 (emphasis added).  *But cf.
Benitec*, 495 F.3d 1340 (noting in dictum that *Super Sack*'s analysis was "not necessarily
dependent" on the test).

*supra* § II.B.  Accordingly, the Court finds that even if *Super Sack*'s analysis were

controlling, Rapaport's covenant not to sue would not destroy the Court's jurisdiction.

### 2.  Idex's Failure to Raise the Upgraded Website in its Initial Counterclaim

Next, Rapaport argues that under *Benitec*, there is a fatal gap in the controversy

supporting the Court's jurisdiction.  (*See* Pl.'s Third Mem. 5.)  Specifically, Rapaport

contends that because Idex did not disclose its upgraded system until after Rapaport filed

its covenant not to sue in February 2008, Idex has not shown a controversy that "existed

at the time the claim for declaratory relief was filed and . . . *has continued since*."

*Benitec*, 495 F.3d at 1344 (emphasis added).  Leaving to the side the possibility that Idex

could correct this "error" by amending its pleadings, *see* Fed. R. Civ. P. 15(a)(2), this

argument is still twice wrong.

First, it ignores the burdens of production and persuasion that apply when a

patent's validity is challenged in a counterclaim to an infringement action.  As *Cardinal*

*Chemical* and *Benitec* teach, a party challenging the validity of a patent always bears the

ultimate burden of showing that an actual controversy supports the action, regardless of

whether the challenge is brought via a freestanding action or a counterclaim.  *See*

*Cardinal Chemical*, 508 U.S. at 96 ("A party seeking a declaratory judgment of invalidity

presents a claim independent of the patentee's charge of infringement."); *Benitec*, 495

F.3d at 1344 ("The burden is on the party claiming declaratory judgment jurisdiction to

establish that such jurisdiction existed at the time the claim for declaratory relief was

filed and that it has continued since.").  If however an invalidity action is brought as a

counterclaim to an infringement action, a court may presume (1) that an actual

controversy supports the counterclaim, *see Cardinal Chemical*, 508 U.S. at 96, and (2)

that "absent further information, that jurisdiction continues," *id.* at 98; *Benitec*, 495 F.3d

at 1344-45.   Thus in the counterclaim context, an infringement plaintiff who wants to challenge the court's jurisdiction over an invalidity counterclaim carries a burden of production whereby it must introduce "further evidence" calling the court's jurisdiction into doubt.  If the infringement plaintiff discharges that burden, the counterclaim plaintiff must establish—without the benefit of the first presumption noted above—that an actual controversy supports the invalidity action.  *See Benitec*, 495 F.3d at 1344 ("The burden of bringing forth such further information may logically rest with the party challenging jurisdiction, but the actual burden of proof remains with the party seeking to invoke jurisdiction." (citations omitted)).

Idex discharged its burdens under this framework.  Because Rapaport charged Idex with infringing the Borgato patent, the Court initially presumed that an actual controversy supported Idex's validity counterclaim.  *See supra* p. 8.  When Rapaport entered a covenant not to sue, it introduced "further evidence" that called the Court's jurisdiction over the invalidity counterclaim into doubt.  The burden thus shifted back to Idex to show an actual controversy supporting its validity action, which it did by introducing evidence that its plans to launch an upgraded website are held back by the possibility that Rapaport will continue to enforce the Borgato patent.  *Cardinal Chemical* and *Benitec* require nothing further.

Rapaport's argument also miscomprehends the rule that "an actual controversy must be extant at all stages of review, not merely at the time the complaint is filed." *Steffel v. Thompson*, 415 U.S. 452, 460 n.10 (1974).  The most important requirement of the rule is that there be an actual controversy when the court acts, including on appeal. *Lewis v. Cont'l Bank Corp.*, 494 U.S. 472, 477 (1990) (holding the "case-or-controversy

requirement subsists through all stages of federal judicial proceedings, trial and appellate"); *Golden v. Zwickler*, 394 U.S. 103, 108 (1969) (holding the requirement applies on remand after appeal).  But nothing in the rule or the Constitution's limitation of federal jurisdiction to "Cases" and "Controversies" requires that the controversy supporting the court's jurisdiction be factually and legally identical throughout a case. Such a limitation is inconsistent both with the design of the federal procedural system, which "relies on liberal discovery rules and summary judgment motions to define disputed facts and issues," *Swierkiewicz v. Sorema N. A.*, 534 U.S. 506, 512 (2002), and with the practice of the federal courts.  *See, e.g.*, *Lewis*, 494 U.S. at 482-83 (remanding for consideration of new evidence of ongoing controversy where initial claim was mooted due to change in legal framework); *Diffenderfer v. Central Baptist Church of Miami, Fla., Inc.*, 404 U.S. 412, 414 (1972) (remanding to allow plaintiffs to amend complaint where case became moot before Supreme Court's decision).  Accordingly, the Court rejects Rapaport's argument.[3]

### 3.  Likelihood of Success on the Merits

Rapaport next contends that there is not a continuing controversy, because Idex's upgraded system cannot possibly infringe the Borgato patent.  (*See* Pl.'s Second Mem. 8-9.)  In particular, Rapaport points to a claim chart produced by Idex's expert that lists

---

[3] In a variation on this objection, Rapaport contends that Idex should not be allowed to rely on the upgraded website because it did not disclose it in response to a broad discovery request for "[a]ll documents concerning the research, specifications, design, development, operation, engineering, or evaluation of the IDEX System[.]"  (Pl.'s Second Mem. 9-10.)  Since Rapaport has not shown that Idex's failure to provide the information earlier was unjustified, that failure cannot support the drastic sanction (i.e., dismissal) Rapaport now seeks.

seven reasons why the Idex system does not infringe the Borgato patent, and claims on this basis that Idex has conceded there is no longer a live controversy.

This attempt to hoist Idex on its own petard confuses the showing needed to establish a case or controversy with the showing necessary to prove infringement. The Declaratory Judgment Act requires only "a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment." *MedImmune*, 549 U.S. at 127 (internal quotation marks omitted). It does not require that the plaintiff demonstrate any particular likelihood of success on the merits. *See Steffel*, 415 U.S. at 471 ("[E]ngrafting upon the Declaratory Judgment Act a requirement that all of the traditional equitable prerequisites to the issuance of an injunction be satisfied before the issuance of a declaratory judgment is considered would defy Congress' intent to make declaratory relief available in cases where an injunction would be inappropriate."). Therefore, the Court need go no further than its earlier conclusion that in view of Idex's upgraded website, there is an actual controversy over the validity of the Borgato patent. *See supra* p. 9.

### 4. Discretion

Finally, Rapaport urges the Court to decline to hear Idex's counterclaim in the exercise of its discretion, arguing that "allowing IDEX to 'shoehorn' this new claim into the litigation at this late stage, after . . . misleading Rapaport into dismissing its own claims, would work a manifest injustice." (Pl.'s Third Mem. 9.)

"[A] district court is authorized, in the sound exercise of its discretion, to stay or to dismiss an action seeking a declaratory judgment before trial or after all arguments have drawn to a close," particularly when doing so is consistent with "considerations of practicality and wise judicial administration." *Wilton v. Seven Falls Co.*, 515 U.S. 277,

288 (1995). *Cf. Cat Tech*, 528 F.3d at 883 ("In deciding whether to entertain a declaratory judgment request, a court must determine whether resolving the case serves the objectives for which the Declaratory Judgment Act was created.").

The Court cannot conclude that Rapaport was "misled" into dismissing its infringement action. And in light of the considerable time and cost already expended in litigation over the Borgato patent, the likelihood that Rapaport will reassert the Borgato patent against Idex, and the "importance to the public at large of resolving questions of patent validity," *Cardinal Chem.*, 508 U.S. at 100, the Court finds that considerations of wise judicial administration, as well as the purposes of the Declaratory Judgment Act, counsel in favor of hearing Idex's counterclaim now. Hence, the Court elects to do just that.

## III. CONCLUSION

Rapaport's motion to dismiss Idex's counterclaim for lack of subject matter jurisdiction **[104]** is denied.

Dated: New York, New York
       December ⟨8⟩ , 2008

                                                    Richard J. Holwell
                                                    United States District Judge

- 17 -